Roksana D. Moradi-Brovia (Bar No. 266572)
Matthew D. Resnik (Bar No. 182562)
**RHM LAW LLP**
17609 Ventura Blvd., Suite 314
Encino, CA 91316
**Telephone:** (818) 285-0100
**Facsimile:** (818) 855-7013
roksana@RHMFirm.com
matt@RHMFirm.com

*Attorneys for Debtor*
MEDIA DDS, LLC

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| In re<br><br>MEDIA DDS, LLC,<br><br>　　　　　　　　Debtor. | Case No. 22-40214-RLE<br><br>Chapter 11<br><br>*No Hearing Required Pursuant to Bankruptcy Local Rule 9014-1(b)(1)*<br><br>Judge: Roger L. Efremsky |

**APPLICATION OF DEBTOR AND DEBTOR-IN-POSSESSION FOR AUTHORITY TO EMPLOY RICHARD L. ANTOGNINI OF LAW OFFICE OF RICHARD L. ANTOGNINI AS SPECIAL COUNSEL FOR THE ESTATE**

MEDIA DDS, LLC, the "Debtor" and "Debtor-in-Possession" in the above-captioned case, hereby applies to this Court to employ Richard L. Antognini of Law Office of Richard L. Antognini (the "Firm" or "Applicant") as special counsel relating to litigation with Homestreet Bank, pursuant to 11 U.S.C. §327 and Rule 2014(a) of Federal Rules of Bankruptcy Procedure, as of May 3, 2022, with compensation pursuant to §§330 and 331, and respectfully represents as follows:

///

# I. STATEMENT OF FACTS

A. Background

The Debtor is a California limited liability company created on August 19, 2010 as a real estate investment company. Alireza Moheb is the sole and managing member of the Debtor. Until recently, Dr. Moheb was a Walnut Creek, California dentist.

The Debtor owns and operates the following real properties:

| Property | Valuation/Liens |
|---|---|
| 7,500 sq ft office building<br><br>2501 Nut Tree Road<br>Vacaville, CA 95687<br><br>APN 0136-070-080<br><br>In 2016, Dr. Moheb's other entity, Moheb DDS LLC, leased 5,000 sq ft (dental office) of this property for $8,500/month, the lease expired March 31, 2021; Debtor entered into a new postpetition lease agreement with an unrelated entity called Mark Tavakoli DDS, Dental Corp. for $15,000/month starting May 1, 2022; 2,500 sq ft remains vacant. | FMV $3,500,000 (per Schedules)<br><br>1st TD: Homestreet Bank $525,727.41 (disputed, see below)<br><br>2nd TD: Homestreet Bank $593,478.13 (disputed, see below)<br><br>UCC: U.S. Small Business Administration $388,000 (per Schedules) |
| 10,000 sq ft 3-level standalone building; Retail/Restaurant<br><br>1716 Broadway<br>Oakland, CA<br><br>APN 008-0623-011-00<br><br>Tenant is Urban Ground, a Nonprofit Public Benefit Corp. and Binta Ayofemi. Monthly lease of $20,000 began on July 19, 2018, and the tenant has defaulted on rent payments. The Debtor retained UD counsel prepetition and will seek approval of their employment during case. | FMV $5,000,000 (per Schedules)<br><br>Sole TD: Homestreet Bank $1,462,807.27 (disputed, see below)<br><br>UCC: U.S. Small Business Administration $388,000 (per Schedules) |

The Debtor's other assets include $371,944.40 of cash in the bank on the petition date, on which the SBA holds a lien.

Dr. Moheb banked for many years at Silvergate Bank ("Silvergate"). His businesses took out multiple loans from Silvergate to buy dental office properties and finance business expenses. Dr. Moheb signed personal guarantees for all the loans. In 2019, Homestreet Bank ("Homestreet") acquired these loans. Mark Johnson, a vice president in Homestreet's Special Assets Division, handled the loans.

The loans concerned four buildings – the Debtor's two properties listed in the chart above and the third is located at 935 Trancas Street, Unit 4D, Napa, CA – and business loans secured by the various entities' personal property assets. Doctor Realty, LLC owns the Napa property and Dr. Moheb is the principal of this entity. The fourth building was located at 4805 West Thomas Road, Phoenix, AZ 85031 and was foreclosed upon by Homestreet on September 16, 2020.

During discussions with the bank in late 2019 and early 2020, Homestreet began to pressure Dr. Moheb to agree to a loan modification that sought to wrap up the loans associated with the non-Debtor entities, drastically increased the total secured amount and also included a new lien on the Oakland property. Essentially, Homestreet demanded that the Debtor convey a $2,050,000 lien on the Oakland property related to existing loans and obligations that were not debts of the Debtor. This written loan modification contained terms that had not been negotiated with the bank and were not aligned with the parties' agreement. Homestreet also placed a "cross-default" provision in the loan documents. Under this clause, any default on any loan puts all loans into default. Dr. Moheb had never had a cross-default clause in these loans until Homestreet insisted.

Finally, during the height of the COVID pandemic, Dr. Moheb applied for PPP funds. He needed those funds to keep his practice open and to pay employees. This process was thwarted by Homestreet because he would not sign the new deed of trust. Without those funds, Dr. Moheb had to close his dental practices.

Dr. Moheb believes that Homestreet acted in bad faith by pressuring him to agree to the loan modification and violated various laws in this respect.

The loans thereafter went into default, according to Homestreet. It then began foreclosure proceedings. In response, the Debtor filed an action in the Solano County Superior Court, (*Media DDS, LLC v Homestreet et al*; Case No. FCS 055596) and the second in Napa Superior Court (*Doctor Realty, LLC v Homestreet et al*) (the "Napa Litigation").

Homestreet filed an action in Alameda Superior Court, alleging that Dr. Moheb had agreed to the loan modification but now was in default (*Homestreet v Moheb DMD, LLC, Media DDS, LLC, Alireza Moheb, et al*; Case No. RG 20066154) (the "Homestreet Litigation"). The complaint includes claims of contract, specific performance, and other remedies.

The Debtor thereafter dismissed the Solano County case without prejudice after being granted an injunction. The Napa litigation was also dismissed without prejudice.

These matters have been dismissed because the Homestreet Litigation is the center of the litigation. The Debtor will remove it to bankruptcy court because the case and resolution thereof concerns and affects estate assets and creditors.

The Debtor filed this case to prevent the foreclosure sale set for March 9, 2022, by Homestreet. Proceeding with the sale would have made the administration of any Chapter 11 plan impossible, as the estate would have lost a significant asset.

B. Basis for Retention of Applicant

The Debtor wishes to employ the Applicant as special counsel to represent it in the litigation case against Homestreet Bank, *Homestreet Bank v. Moheb DMD, et al*, Case No. RG2006615, in accordance with the terms of the legal services retainer agreement ("Retainer Agreement") which is attached as **Exhibit "A"** to the declaration of Richard L. Antognini in support of this Application.

The Debtor seeks to remove the Homestreet Action to the Bankruptcy Court as the causes of actions and the Debtor's defenses and counterclaims are within this Court's jurisdiction.

The Debtor requires the services of the Applicant to render professional services relating to the Homestreet Litigation, including removing the state court action to the Bankruptcy Court and litigating claims in an adversary proceeding.

C. *Modifications to the Retainer Agreement*

The Retainer Agreement was entered between the Applicant and the Debtor prepetition. As such, the Applicant and the Debtor agreed to modify the agreement to the extent that it comports with the Bankruptcy Code.

The Applicant agreed to represent other parties besides the Debtor. However, the Retainer Agreement will only pertain to the Applicant and the Debtor.

The Applicant agrees to strike ¶4.(c). (Legal Fees) in the Retainer Agreement because the Applicant will solely represent the Debtor in the Homestreet Litigation postpetition. The Debtor has not retained other counsel in this matter prepetition.

The Applicant also agrees to strike the following provisions in the Retainer Agreement, "*Arbitration of Fees, Costs Disputes*" and "*Binding Arbitration of Malpractice Claims and Other Disputes*".

## II. ARGUMENT

A. *The Applicant is Qualified to Represent Debtor in the Homestreet Litigation*

As set forth in the Applicant's resumes, a true and correct copy of which is attached as **Exhibit "B"** to the declaration of Richard L. Antognini's in support of this Application, the Applicant has extensive experience litigating against lenders and is therefore well-qualified to represent the Debtor in proceedings of this nature.

B. *Compensation*

As set forth in the Retainer Agreement between the Applicant and Debtor, the Debtor has agreed to pay the Applicant an *initial* retainer fee of $200,000 for its representation of the Debtor in this case, to be paid by Dr. Moheb's father, Mr. Ahmad Moheb. Mr. Moheb paid $125,000 of the retainer amount on October 27, 2021; the remaining amount owed by him is $75,000. No part of the retainer fee was paid by the Debtor and the Debtor will not pay the remaining amount. The funds were deposited into an account separate from my regular business account.

Prepetition, the Applicant was drawing down on the retainer fee in accordance with the Retainer Agreement for the services rendered the litigation cases. The amount of the retainer fee remaining is $96,762.67. The Applicant has not and will not draw down on it postpetition unless and until the Court approves its employment.

As set forth in the attached declaration of Ahmad Moheb, he paid the retainer fee on behalf of and as a gift to the Debtor. He does not expect to be repaid.

The Applicant will render services to the Debtor at its regular hourly rates of <u>$650 per hour</u>, pursuant to the Retainer Agreement, which may be subject to adjustment from time to time, and the Applicant understands that its compensation in this case is subject to approval of this Court.

The Applicant's compensation will be based upon various factors including, but not limited to, its customer hourly fees to clients paying at monthly intervals, the novelty or difficulty of the legal issues presented, and the results obtained.

The Applicant intends to apply to this Court for compensation and reimbursement for fees incurred and costs advanced in conformity with 11 U.S.C. §§330 and 331. The Applicant will file interim fee applications no more often than every 120-days. No additional compensation will be paid to the Applicant postpetition by the Debtor, or any other party, except upon application to and approval by the Court.

At the conclusion of this proceeding, the Applicant will file an appropriate application seeking allowance of *all* fees and costs, regardless of whether interim compensation has been paid. Upon allowance of such fees and costs, Debtor will pay the Applicant the difference between the amounts allowed and any interim compensation paid.

C. *Disinterestedness of Professionals*

As set forth in detail in Mr. Antognini's accompanying declaration, no person in the Applicant holds any interest in, nor is any person materially adverse to the Debtor, and thus the Applicant constitutes a disinterested person as contemplated by 11 U.S.C. §327 and defined in §101(14) of the *Bankruptcy Code*.

The Applicant is not owed any prepetition fees for services because it has not extinguished the prepetition retainer paid by a third party.

Other than as set forth herein, the Applicant has not in the past represented the Debtor, its principals, insiders, or affiliates, and has no plans to represent any other related debtors, principals, insiders, or affiliates.

To the best of Mr. Antognini and the other members of the Applicant's knowledge, no person in the Applicant has any relationship or connection with the Debtor's creditors or other parties in interest or respective attorneys or accountants except as set forth herein.

///
///
///
///
///
///
///
///
///

# III. CONCLUSION

**WHEREFORE**, the Debtor respectfully requests to be authorized, based upon the foregoing and pursuant to 11 U.S.C. §327 and Rule 2014(a) of Federal Rules of Bankruptcy Procedure, to employ Richard L. Antognini of Law Office of Richard L. Antognini as special counsel relating to litigation with Homestreet Bank, as of May 3, 2022, with compensation pursuant to §§330 and 331, or upon modified terms as the Court may deem just and proper.

Dated: May 27, 2022               **RHM LAW LLP**

By: **/s/ Roksana D. Moradi-Brovia**
**Roksana D. Moradi-Brovia**
**Matthew D. Resnik**
*Attorneys for Debtor*
Media DDS, LLC