# EXHIBIT "A"

E-mail:
rlalawyer@yahoo.com

Law Office of
# Richard L. Antognini
2036 Nevada City Highway, Suite 636
Grass Valley, California 95945-7700
Telephone: (916) 295-4896

Appeals

## ATTORNEY-CLIENTS AGREEMENT

**Identification of Parties**

1. This contract is made and entered into, effective as of the date of the last party to sign, by and between The Law Office of Richard L. Antognini, hereinafter referred to as "Attorney", and Alireza Moheb, Media DDS, LLC, Moheb DMD, Inc., and Doctor Realty, LLC individually and collectively referred to as "Clients".

**Employment of Attorney**

2. Clients ask attorney to represent Clients in these civil actions:

   a.  <u>Homestreet Bank v. Moheb DMD, et al,</u> Alameda County Superior Court action no. RG 2006615.
   b.  <u>Media DDS, LLC v. Homestreet Bank, First American Title Insurance</u>, Solano County Superior Court action no. FCS055596
   c.  <u>Doctor Realty, LLC v. Homestreet Bank,</u> Napa County Superior Court, including reversal of foreclosure, recording of lis pendens, and wrongful foreclosure and wrongful eviction claims for Doctor Realty LLC against Homestreet Bank and Union Street Holdings, LLC.
   d.  An expected lender liability suit against Homestreet Bank, to be filed in the Alameda County Superior Court as a separate action or as a cross-complaint in <u>Homestreet Bank v. Moheb DMD, et al</u>., referred to above. Collectively, this agreement refers to these actions as the "matters assigned."
   e.  Claims against Homestreet Bank for losses suffered by Doctor. Realty LLC and Moheb DMD, Inc. due to wrongful foreclosure of property in Arizona.
   f.  Subpoena homestreet bank records in regards to PPP application date on sba portal , date of loan number and date it was funded.
   g.  Based on other cases against homestreet maybe that we will need to file against silvergate bank and or subpoena all communications between homestreet and silvergate in regards to my loans to find out why they transferred loans to "special assets group" that my representatives called me to tell me to refinance out asap.   .

Attorney shall act as litigation counsel, prepare pleadings and briefs, conduct discovery and depositions, review documents, prepare and opposing motions, and conduct any trials if necessary. This agreement does not include any appellate representations, including direct appeals and writ petitions. If Clients wish to retain Attorney for those

- 1 -

services, they shall negotiate a separate fee agreement.

The Attorney may take any actions that, in his discretion, are necessary to represent the Clients. However, no disposition or settlement will be made without the consent of Clients. The Attorney does not guarantee any result but does pledge to use reasonable efforts to reach a satisfactory and timely conclusion to the matter.

**Obligations of Attorney**

3. The Attorney shall advise and represent the Clients in the matter specified in Paragraph 2, including, as necessary: preparing pleadings and briefs, conducting discovery and depositions, reviewing documents, preparing, or opposing any motions, and conducting any trials if necessary.

**Legal Fees**

4. The Clients agree to pay the Attorney as follows for the services described in Paragraphs 2 and 3:

(a) **Clients agree to pay Attorney a true retainer fee of $200,000.00. This agreement shall not be effective until the date the retainer payment is made by wire transfer or electronic transfer. The true retainer fee shall be paid by October 29, 2021.** Clients agree that Attorney shall immediately earn the retainer and Attorney will not deposit the retainer in a Client Trust Account. Attorney shall refund to Clients any portion of the retainer that is not used before Clients' claims are resolved.

(b) Clients and Attorney agree that Attorney shall cap his fees at $200,000.00 for all services provided under this Agreement. However, all costs paid or incurred by attorney shall not be subject to the $200,0000.00 cap, including deposition costs, filing fees, court reporter fees, travel expenses, expert fees, witness fees, and trial expenses. Attorney may ask Clients to post a retainer for costs, pay the costs himself, or have the Clients pay the costs. This cap does not apply to any appellate work, including direct appeals or writ proceedings. The cap does apply to motions for a new trial, motions for judgment notwithstanding the verdict, motions for attorney's fees and motions to tax costs.

(c) ~~Clients further agree that they will retain a separate law firm or attorney to assist Attorney in his representation of Clients. Clients shall pay this co-counsel $100,000 on the same terms as outlined in paragraphs 1-4 above.~~

(d) Clients agree that all retainer fee payments will be made by a third-party and not by Clients.

(e) Attorney shall track his time at $650 per hour. This charge is for information purposes and will not be billed to client unless Attorney is terminated before his fees equal $200,000. This will allow Attorney to calculate the refund to the Clients or reimbursed in such case mentioned in 4 (f)

(f) If attorney's fees are awarded to Clients and those fees exceed $200,000, Attorney shall be paid the excess hours recorded above the cap.

CLIENTS agree that ATTORNEY shall immediately earn the $200,000 true retainer when payment is made and need not deposit them into his Client Trust Account.

The amount of all fees agreed upon in this agreement is not set by law but is negotiated and mutually agreed between Attorney and Clients. The Attorney's fees set forth in this agreement are only for legal services in relations to matter described in Paragraphs 2 and 3, above which are or arise as result of relationship and agreement with opus, Silvergate, Homestreet bank and or its subsidiaries. Fees to handle other matter unrelated to cases in this agreement with or without separate retainer owed to attorney, it is understood, and client agrees to compensate attorney for fees for these matters which will be discussed and mutually agreed on outside of the cap in this retainer.

**Costs and Expenses**

5. The Clients agree to pay in advance of the need to incur said costs all reasonable and necessary costs and expenses incurred by the Attorney on behalf of the Clients in connection with the services described in Paragraphs 2 and 3, including but not limited to the following:

   a. Filing fees.
   b. Court reporter fees
   c. Expert fees
   d. Witness fees
   e. Trial expenses, including hotel stays, mileage, meals, and transportation expenses.

**Responsibility for, and Advancement of, Costs and Expenses**

6. The Clients agree to pay in advance, or at the option of the Attorney all costs and expenses to be incurred in connection with the services described in Paragraphs 2 and 3. **The Clients are responsible for all costs and expenses, whether they have been advanced by the Attorney and regardless of the outcome.** The Attorney shall not be obligated to pay or advance any such costs or expenses and may at his sole option (1) require the Clients to advance payment for any such costs or expenses; or (2) arrange to have those costs and expenses directly billed to the Clients. Notwithstanding this provision, the Attorney may, at his sole option, advance such costs or expenses as he deems appropriate and obtain reimbursement from the Clients under Paragraph 5. The fact that the Attorney elects to advance any particular item of cost or expense on behalf of the Clients shall not be deemed to create an obligation to advance the same or similar items of cost or expense at any future time.

**Other Obligations of Clients**

7.  The Clients agree to cooperate with the Attorney to the extent necessary for the Attorney to discharge his duties under this Agreement. Said cooperation includes, but is not limited to, full and complete truthfulness by Clients in making all relevant disclosures to the attorney concerning the facts surrounding The Matter Assigned and all related matters, the Clients being available when needed for interviews, telephone conferences, search for documents, attendance at all court appearances, proceedings, meetings, conferences, and other events at which the Clients' presence in the opinion of the Attorney is required; and providing the Attorney with any necessary documents and other information promptly and upon request. The failure of Clients to fully fulfill Clients' obligations set forth herein, and/or to keep all financial commitments set forth in this Agreement, shall be deemed a material breach of this Agreement and grounds for withdrawal of the Attorney from the case upon the giving of reasonable notice as set forth in this Agreement.

**Termination**

8.  **The Clients may terminate this Agreement at any time by giving written notice of termination.** If the Attorney receives such a notice, he immediately will stop work on the matter described above. However, the Clients shall remain obligated to pay the fee described above and any costs and expenses incurred until representation ends.

**No Errors and Omissions or Professional Liability Insurance Coverage**

9.  The Attorney hereby discloses that he does not maintain errors and omissions insurance or professional liability insurance applicable to the services to be rendered under this Agreement.

**Certification of Good Faith**

10.  **A claim or defense brought solely to harass, to coerce a settlement or to delay may result in court-imposed sanctions and/or liability to the Clients for malicious prosecution and/or abuse of process. In the event of a loss, the Clients may be liable for the opposing side's attorneys' fees and costs.** The Clients, by executing this Agreement, certifies that the Clients' claims are not brought to harass, to coerce, or to delay and are meritorious claims made in good faith.

**~~Arbitration of Fees, Costs Disputes~~**

11.  ~~Any dispute relating to the Attorneys' fees, costs, or both, under this Agreement shall be submitted to binding arbitration, if permitted by California law at the time such dispute arises; or if not so permitted, then the Clients and the Attorneys shall submit such dispute to non-binding arbitration before the County Bar Association of the County in which the action which is the subject of The Matter Assigned is filed (or if such is unavailable, to the Sacramento County Bar Association), or if both are unavailable, to non-binding arbitration provided for by the State Bar of California, unless the Clients and the Attorneys~~

~~agree after any such dispute has arisen to submit such dispute to binding arbitration. Such arbitration, whether binding or non-binding, shall be conducted by the said County Bar Association of the County in which the action is filed, or if that Association is unable or unwilling to conduct such an arbitration, then by the Sacramento County Bar Association, or if that Association is unable or unwilling to conduct such an arbitration, then by the State Bar of California, or if the State Bar is unable or unwilling to conduct such an arbitration, then by a single arbitrator appointed by the then presiding judge of the Sacramento County Superior Court. If the Clients waives Clients' right to non-binding arbitration, any dispute, claim, or controversy arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation, or validity thereof, including the determination of the scope or applicability of this agreement to arbitrate, shall be determined by arbitration in Sacramento before one arbitrator, who shall be an appellate retired judge. The arbitration shall be administered by JAMS pursuant to its Comprehensive Arbitration Rules and Procedures (Streamlined Arbitration Rules and Procedures). The arbitration hearing shall last no longer than 5 hours. No discovery shall be allowed prior to the arbitration. Judgment on the Award may be entered in any court that has jurisdiction. This clause shall not preclude parties from seeking provisional remedies in aid of arbitration from a court of appropriate jurisdiction. The arbitrator may, in the Award, allocate all or part of the costs of the arbitration, including the fees of the arbitrator and the reasonable attorneys' fees of the prevailing party.~~

**~~Binding Arbitration of Malpractice Claims and Other Disputes~~**

~~12. By separately signing this arbitration provision, Clients and the Attorneys agree to have all disputes (except where Clients may request arbitration of a fee dispute by the State Bar or local bar association as provided by Business and Professions Code Section 6200, et. seq.), that arise out of, or relate to this Agreement, including but not limited to claims of professional negligence or malpractice arising out of or relating to the legal services provided by the Attorneys to Clients, decided only by binding arbitration before a sole arbitrator (who shall be a retired appellate judge) in accordance with the laws of the State of California for contracts made in and to be performed in that State. The arbitration shall be administered by JAMS in San Francisco, California pursuant to its Streamlined Arbitration Rules and Procedures. Judgment on the Award may be entered in any court that has jurisdiction. Thus, any such claim, including any claim for attorney malpractice, shall be decided by binding arbitration as set forth above, and not by court action, except as provided by California law for judicial review of arbitration proceedings.~~

~~In agreeing to this arbitration provision, **THE LAW OFFICE OF RICHARD L. ANTOGNINI, AND ANY EMPLOYEE OR INDEPENDENT CONTRACTOR THEREOF, AND CLIENTS, ARE SPECIFICALLY GIVING UP: (I) ALL RIGHTS SAID ATTORNEYS AND CLIENTS MAY POSSESS TO HAVE SUCH DISPUTES DECIDED IN A COURT OR JURY TRIAL; AND,**~~

**~~(II) ALL JUDICIAL RIGHTS, INCLUDING THE RIGHT TO APPEAL FROM THE DECISION OF THE ARBITRATOR.IF EITHER ATTORNEY OR CLIENTS SHOULD REFUSE TO SUBMIT TO ARBITRATION, EITHER ATTORNEY OR CLIENTS MAY BE~~**

~~COMPELLED TO ARBITRATE UNDER CALIFORNIA LAW. ATTORNEY AND CLIENTS ACKNOWLEDGE THE ABOVE, AND THAT THIS MUTUAL AGREEMENT FOR BINDING ARBITRATION IS VOLUNTARY.~~

~~By signing below, Clients confirm that Clients have read and understand this provision, and voluntarily agree to binding arbitration. In doing so, Clients **voluntarily give up important constitutional rights to trial by judge or jury, as well as rights to appeal.** Clients are advised that **Clients have the right to have independent counsel review this arbitration provision, and this entire agreement, prior to initialing this provision or signing this Agreement**. General information regarding arbitration of disputes can be obtained from the San Francisco County Bar Association and from the California State Bar. Before signing this Agreement and agreeing to binding arbitration, Clients are entitled, and encouraged, to seek independent advice and counsel.~~

*A.R.Moheb*
_____
(Client signs here)

*A.R.Moheb*
_____
(Client signs here)

*A.R.Moheb*
_____
(Client signs here)

*A.R.Moheb*
_____
(Client signs here)

*Richard Antognini*
_____
Richard Antognini

~~**Waiver of Rights to Trial, Discovery, and Appeal by Agreement to Arbitrate**~~

~~13. By initialing this page and signing this Agreement in the space provided below, the Clients acknowledge that this agreement to arbitrate results in the Clients waiving the Clients' right to a court or jury trial for any fee or cost dispute or any malpractice claim against the Attorneys. This also means that the Clients are giving up the Clients' rights to discovery and appeal. If the Clients later refuse to submit to arbitration after agreeing to do so, the Clients may be required to arbitrate pursuant to provisions in the law.~~ **~~By initialing below, Clients confirms again that Clients fully understands this.~~**

*A.R.Moheb*
_____
(Client initials here)

*A.R.Moheb*
_____
(Client initials here)

*A.R.Moheb*
_____
(Client initials here)

*A.R.Moheb*
_____
(Client initials here)

**Association of Other Attorneys**

14. The Attorney may, at the Attorneys' sole discretion, engage any other attorneys in representing the Clients, who shall perform duties under the Attorney's supervision and control.

**Entire Agreement**

15. This Agreement supersedes all other agreements, either oral or in writing, between the Clients and the Attorneys with respect to the subject of this Agreement. This Agreement contains all the covenants and agreements between the parties with respect to the subject matter of this Agreement, and each party to this Agreement acknowledges that no representations, inducements, promises, or agreements have been made by or on behalf of any party except those covenants and agreements embodied in this Agreement. No agreement, statement, or promise not contained in this Agreement shall be valid or binding. This Agreement is the result of negotiation between the parties, and each party has contributed language hereto. The Clients have read and fully understand all the terms and conditions of this Agreement and have had the opportunity to be advised by independent legal counsel before signing it. Each party to this Agreement is retaining an executed copy thereof.

**Attorney's Fees for Enforcement of Agreement**

16. The prevailing party in any action or proceeding to enforce any provision of this Agreement will be awarded reasonable attorney's fees and costs incurred.

**Governing Law and Venue**

17. The validity of this Agreement and of any of its terms or provisions, as well as the rights and duties of the parties under this Agreement, shall be construed pursuant to and in accordance with California law. This Agreement shall be considered to have been made and entered into in Sacramento, California and shall be performed, at least in part, in such County. The parties agree that venue for any action to enforce this Agreement shall be proper in Sacramento County.

**Severability in Event of Partial Invalidity**

18. If any provision of this Agreement is held in whole or in part to be unenforceable for any reason, the remainder of that provision and of the entire Agreement will be severable and remain in effect.

**THE PARTIES HAVE READ AND UNDERSTOOD THE FOREGOING TERMS, INCLUDING WITHOUT LIMITATION THE ARBITRATION PROVISIONS, AND AGREE TO THEM AS OF THE DATE ATTORNEY FIRST PROVIDED SERVICES. IF MORE THAN ONE CLIENTS SIGNS BELOW, EACH AGREES TO BE LIABLE, JOINTLY AND SEVERALLY, FOR ALL OBLIGATIONS UNDER THIS AGREEMENT. CLIENTS SHALL RECEIVE A FULLY EXECUTED DUPLICATE OF THIS AGREEMENT.**

*NOTE TO CLIENTS BEFORE SIGNING:* **If the arbitration clause in this agreement has been signed, Clients agree to have issues including malpractice decided by binding arbitration and Clients are giving up Clients' right to a court or jury trial for such disputes.**

*A.R.Moheb*
_____    Date: October 28, 2021
**Alireza Moheb**

*A.R.Moheb*
_____    Date: October 28, 2021
**Media DDS, LLC**

*A.R.Moheb*
_____    Date: October 28, 2021
**Moheb DMD, Inc.**

- 8 -

Case: 22-40214   Doc# 55-4   Filed: 05/27/22   Entered: 05/27/22 15:40:07   Page 9 of 19

*A.R.Moheb*
_____   **Date: October 28, 2021**
**Doctor Realty, LLC**

*Richard Antognini*
_____   **Date: October 28, 2021**
**Richard L. Antognini individually, and
as owner of the Law Office of
Richard L. Antognini**

# EXHIBIT "B"

**RICHARD L. ANTOGNINI**
**Attorney at Law**
**2036 Nevada City Highway, Suite 636**
**Grass Valley, California 95945-7700**
**Telephone:   (916) 295-4896**
**E-mail:       rlalawyer@yahoo.com**

---

**PRACTICE EMPHASIS:**

**Appeals**

Appeals in all fields of civil litigation, including briefs, appellate motions, oral argument, petitions for review, petitions for writs of certiorari to the United States Supreme Court, and petitions for writs of mandate or prohibition.

**Bankruptcy**

Representation of debtors and creditors in complex bankruptcy cases, including adversary proceedings, motions to contest discharge, and related bankruptcy court litigation. Specializing in bankruptcy appeals.

**Commercial Litigation**

Investment advisor malpractice, including claims against stockbrokers, accountants, and related professionals for bad investment advice.

Lender liability litigation, including actions involving commercial loans, and mortgage litigation, including TILA, foreclosure, RESPA, and related claims.

Prosecution and defense of business litigation claims, including claims under Business & Professions Code section 17200 and consumer protection actions.

Litigation of intellectual property claims, including trade secrets, trademark, copyright and patent infringement actions.

**Insurance**

Insurance litigation, opinions and advice involving:

> Insurance coverage for construction defects litigation, including additional insured disputes, indemnity agreements, and land subsidence problems;

Insurance coverage for intellectual property litigation, technology litigation, securities litigation, antitrust litigation, and business litigation generally, including the impact of Aadvertising injury@ coverage;

Insurance coverage for pollution and toxic tort claims, such as CERCLA claims, mold lawsuits, mold remediation measures, and claims by state or local environmental authorities;

Insurance coverage for wrongful termination, sexual harassment, employment discrimination, and age discrimination claims;

Insurance coverage issues arising from directors' and officers' policies; and

Insurance coverage for mold claims under property policies.

**Extracontractual Litigation**

Representation of parties in bad faith litigation, including actions alleging breach of the implied covenant of good faith and fair dealing, violation of unfair claims practices statutes, deceptive practices acts, or other consumer protection laws.

**EDUCATION:**

University of California, Hastings College of the Law, J.D., 1977
University of California, Berkeley, A.B., 1974

**EXPERIENCE**

**August 2005 through Present**

Solo practitioner, Law Offices of Richard L. Antognini, Grass Valley, California. Worked in bankruptcy, complex civil litigation and appeals. Filed briefs, discovery, and motions. Handled cases from beginning through trial and appeal

**January 2003 through August 2005**

Partner, Swanson & Antognini, Sacramento, California. Partner in charge of insurance coverage litigation. Handled all aspects of complex insurance coverage litigation from filing of the complaint, through trial and appeal. Did own legal research, wrote own briefs and motions.

**December 2001 through December 2002**

Of Counsel, Goldsberry, Freeman & Swanson, Sacramento, California. Wrote coverage opinions and handled insurance coverage litigation.

**June 1994 through December 2001**

Partner, Lewis, Brisbois, Bisgaard & Smith, Sacramento, California. Partner in charge of insurance coverage litigation. Handled all aspects of complex insurance coverage litigation from filing of the complaint, through trial and appeal.

**March 1988 through October 1993**

Partner, Arter & Hadden, Los Angeles, California. Partner in charge of insurance coverage litigation. Supervised five associates. Handled all aspects of complex insurance coverage litigation from filing of the complaint, through trial and appeal.

**PROFESSIONAL MEMBERSHIPS**:

Admitted to California Bar 1977.

Admitted to the bars for the United States District Courts for the Northern, Eastern, Central and Southern Districts of California.

Admitted to the bar of the United States Court of Appeals for the Ninth Circuit.

Member, Consumer Attorneys of California, American Association for Justice.

**PUBLICATIONS:**

The Law of Unintended Consequences: HIPAA and Liability Insurers, 69 <u>Defense Counsel Journal</u> 296 (July 2002).

Don't Ask, Don't Tell, 6 <u>House Counsel</u> 37 (Sept. /Oct. 2001).

ANew U.S. Tort Litigation: To Go Warily Where No One Has Gone Before, 67 <u>Defense Counsel Journal</u> 454 (Oct. 2000).

Forward to the Past: California's New and Old Bad Faith Statutes, 22 <u>Insurance Litigation Reporter</u> 4 (Jan. 2000).

\#  3

Fortuity, Reinsurers and Year 2000 Problem: Will These Theories Carry the Day, 66 Defense Counsel Journal 253 (April 1999).

Why Neither Side Has Won Yet: Recent Trends in Advertising Injury Coverage, 65 Defense Counsel Journal 18 (Jan. 1998).

Is the Universe Now Finite? Buss v. Superior Court and the Duty to Defend in California, 9 California Insurance Law & Regulation Reporter 149 (July 1997).

Intellectual Property Coverage: What You Need to Know, 6 Coverage 3 (Nov. /Dec. 1996).

What You Need To Know About Intellectual Property Coverage, 31 Tort and Insurance Law Journal 895 (Summer 1996).

Why the Changing Winds Do Not Blow For Either Side: Intellectual Property Coverage in 1995,@ published in the ABA's Fall 1996 Intellectual Property Litigation Committee Newsletter.

Montrose v. Admiral Insurance, 8 California Insurance Law & Regulation Reporter 3 (Jan. 1996); also published as Understanding and Moving Beyond Montrose v. Admiral Insurance, 18 Insurance Litigation Reporter 298 (June 1996).

The Impact of Waller v. Truck Insurance Exchange on the Duty to Defend in California, 17 Insurance Litigation Reporter 465 (Oct. 1995).

Prophet or Follower? 9th Circuit's Development of Insurance Law 1993-1994, published in the 9th Circuit Annual Roundup, 1 Daily Journal Res Ipsa pp. 10-14 (Oct. 12, 1994).

What's Happening in the Law: Surveying the New Developments: Reinsurance, 61 Defense Counsel Journal 332 (July 1994).

The Coming Guerrilla War Over the Pollution Exclusion, 6 Environmental Claims Journal 521 (Summer 1994).

A Prophecy from the Wilderness: The California Supreme Court and the Trigger of Coverage Issue, 5 California Insurance Law & Regulation Reporter 196 (June 1993).

Property Insurance, in California Real Property Sales Transactions, pp. 717-751 (2d. ed. Cal. CEB 1993).

# 4

Case: 22-40214   Doc# 55-4   Filed: 05/27/22   Entered: 05/27/22 15:40:07   Page 15 of 19

How the California Courts Have Eliminated Coverage for Wrongful Termination Claims, 4 California Insurance Law & Regulation Reporter 375 (Dec. 1992).

The Limited--and Not So Limited--Implications of Bank of the West v. Superior Court, 4 California Insurance Law & Regulation Reporter 328 (Nov. 1992).

The Limited Impact of Prudential-LMI Insurance on Liability Policies, The Verdict, pp. 18-29 (2nd Quarter 1992).

When Will My Troubles End?  The Loss In Progress Defense in Progressive Loss Insurance Cases, 25 Loyola of Los Angeles Law Review 419 (Jan. 1992).

Concurrent Causation in California: The Effect of Garvey v. State Farm on Property and Liability Policies, 11 Insurance Litigation Reporter 363 (Sept. 1989).

Aerojet-General v. Superior Court: The Future of Coverage for Cleanup Costs, 3 California Litigation 21 (Fall 1989).

Defense Counsel in the Middle, 55 Defense Counsel Journal 407 (Oct. 1988), which received the Yancey Memorial Award as that publication=s best article in 1988.

**Representative Cases:**

> *Yvanova v. New Century Mortgage Corp.,* 62 Cal.4th 919 (2016)
> *Oskoui v. JPMorgan Chase Bank, N.A.,* 851 F.3d 851 (9th Cir. 2017)
> *Yhudai v. Impac Funding,* 1 Cal.App.4th 1252 (2016)
> *Saterbak v. JPMorgan Chase Bank, N.A.,* 245 Cal.App.4th 808 (2016)
> *Mountjoy v. Bank of America,* 245 Cal.App.4th 266 (2016)
> *Pham v. Golden,* 536 B.R. 428 (9th Cir. BAP 2015)
> *Davis v. U.S. Bank, N.A. (In re Davis),* 778 F.3d 809 (9th Cir. 2015)
> *Glaski v. Bank of America,* 218 Cal.App.4th 1079 (2013)
> *Demarest v. HSBC Bank USA, N.A.,* 920 F.3d 1223 (9th Cir. 2019)
> *Hacker v. Homeward Residential,* 26 Cal.App.5th 270 (2018)
> *Chacker v. JPMorgan Chase Bank, N.A.,* 27 Cal.App.5th 351 (2018)

# EXHIBIT "C"

Roksana D. Moradi-Brovia (Bar No. 266572)
Matthew D. Resnik (Bar No. 182562)
**RHM LAW LLP**
17609 Ventura Blvd., Suite 314
Encino, CA 91316
**Telephone:** (818) 285-0100
**Facsimile:** (818) 855-7013
roksana@RHMFirm.com
matt@RHMFirm.com

*Attorneys for Debtor*
MEDIA DDS, LLC

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

In re

MEDIA DDS, LLC,

        Debtor.

Case No. 22-40214-RLE

Chapter 11

*No Hearing Required Pursuant to Bankruptcy Local Rule 9014-1(b)(1)*

Judge: Roger L. Efremsky

**ORDER GRANTING APPLICATION OF DEBTOR AND DEBTOR-IN-POSSESSION FOR AUTHORITY TO EMPLOY RICHARD L. ANTOGNINI OF LAW OFFICE OF RICHARD L. ANTOGNINI AS SPECIAL COUNSEL FOR THE ESTATE**

The Court having considered the *Application of Debtor and Debtor-in-Possession for Authority to Employ Richard L. Antognini of Law Office of Richard L. Antognini as special counsel* (the "Application") filed by MEDIA DDS, LLC, the "Debtor" and "Debtor-in-Possession" in the above-captioned case, and the declarations in support thereof; and it appearing that the proposed counsel does not hold or represent any interest adverse to the estate in the matters on which they are to be employed, that such counsel is

a disinterested person and that such employment is in the best interest of the estate; that further notice or opportunity for hearing is not necessary in connection with the Application; and good cause appearing therefor,

**IT IS HEREBY ORDERED**, **ADJUDGED AND DECREED** that:

1. The Application is **APPROVED;**

2. The Debtor is permitted to employ Richard L. Antognini of Law Office of Richard L. Antognini ("Applicant") as special counsel pursuant to 11 U.S.C. §327, effective as of May 3, 2022, with compensation pursuant to 11 U.S.C. §§330 and 331, and on the terms set forth in the Application;

3. The Court's Guidelines shall apply with respect to the Applicant's compensation herein; and

4. The Applicant shall not withdraw from this representation absent order the Court.

* * * END OF ORDER * * *